UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CARDFLEX, INC., f/k/a CARDFLEX FINANCIAL
SERVICES, LLC,

        Plaintiff,

- against -

GREG GARVIS and ETAIL MEDICAL, LLC,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No.: 1:16-cv-01404

ECF Case

**COMPLAINT**

Plaintiff CardFlex, Inc., f/k/a CardFlex Financial Services, LLC ("CardFlex"), by its attorneys, Kleinberg, Kaplan, Wolff & Cohen, P.C., for its complaint against defendants Greg Garvis ("Garvis") and Etail Medical, LLC ("Etail Medical"), alleges as follows:

### Nature of the Action

1. This case involves a fraudster who purports to sell medical equipment to disabled people over the internet and then fails to deliver the equipment.

2. Plaintiff CardFlex is a credit card processor that was left holding the bag after consumers did not receive the hospital beds, motorized scooters, handicapped access ramps, and other items for which they had paid the defendant, Greg Garvis, and his alter ego company Etail Medical whose obligations he personally guaranteed. The consumers were reimbursed by Visa and their other credit card companies, which then "charged back" CardFlex for those monies.

3. Garvis personally guaranteed Etail Medical's obligations to CardFlex, but after cheating his consumers out of more than $300,000, he refused to reimburse CardFlex for the ensuing chargebacks, shifted to another business with a similar tradename apparently in order to continue his scam, and then had his lawyer falsely contend that he "was never substantially involved in Etail's business operations."

4. This suit is for CardFlex to recover from Garvis the losses it incurred as a result of his scheme, together with other fees Garvis is contractually obligated to pay, plus the legal fees CardFlex incurs in connection with enforcing the guarantee as expressly authorized by its terms. Etail Medical is also named as a defendant, but upon information and belief, Garvis deliberately undercapitalized it and later left it without assets sufficient to satisfy its obligations to CardFlex and accordingly CardFlex's judgment against Etail Medical is expected to be uncollectible.

## The Parties

5. Plaintiff CardFlex is a California corporation with its principal place of business in Costa Mesa, California. CardFlex offers credit card payment processing services to a variety of merchants, including many merchants in the State of New York.

6. Upon information and belief, Garvis is an individual residing in Parker, Colorado. Garvis is in the business of distributing medical supplies and defrauding customers in New York and throughout the United States in connection therewith, primarily or exclusively through the internet.

7. Defendant Etail Medical is a Colorado corporation with its principal place of business in Colorado. Etail Medical conducted its business operations under the tradename "Emedstores," which name Garvis personally registered on Etail Medical's behalf several months after entering into the contractual relationship with CardFlex that is the subject of this suit.

## Jurisdiction and Venue

8. Diversity jurisdiction is proper under 28 U.S.C. §1332 because (i) the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; (ii) Plaintiff CardFlex is a citizen of the State of California; and (iii) Defendants Garvis and Etail Medical are citizens of the State of Colorado.

9. Personal jurisdiction and venue are proper because CardFlex and Garvis contractually agreed to litigate any claims "arising under or related to" their agreement "in the appropriate state or federal court located in Suffolk County, New York."

## Relevant Facts

### The Parties' Contract and Personal Guarantee

10. In late 2010, Garvis asked CardFlex to handle the electronic payment processing for a medical supply distribution business he claimed to own, named Etail Medical, LLC.

11. CardFlex agreed to work with Garvis and his company, but only if Garvis would provide (among other things) a written personal guarantee for all transactions Etail Medical processed, and all sums due and owing, in connection with the electronic payment processing work CardFlex was to perform for Etail Medical.

12. On or about December 10, 2010, Garvis executed and submitted to CardFlex a Merchant Application and Agreement ("MAA"). CardFlex accepted the application on or about December 14, 2010.

13. On the MAA, Garvis identified himself as an "owner" of Etail Medical, which he represented sold medical supplies via its website www.emedstores.com. Garvis also represented (among other things) that Etail Medical had been in business a year and a half and that it did $400,000 in monthly volume through the Visa/MasterCard/Discover network.

14. The MAA also included a "PERSONAL GUARANTEE" of Etail Medical's obligations to CardFlex, and Garvis executed that "PERSONAL GUARANTEE" with his separate signature on or about December 10, 2010. The "PERSONAL GUARANTEE" provided as follows:

> The undersigned [Garvis] guarantees to [CardFlex] the performance of this Agreement… and in the event of default, hereby waives Notice of Default and agrees to indemnify the other parties, including payment of all sums due and owing and costs associated with enforcement of the terms hereof. CardFlex…shall not be required to first proceed against

3

[Etail Medical] or enforce any other remedy before proceeding against [Garvis]. This is a continuing guarantee and shall not be discharged…and shall bind the heirs, administrators, representatives and assigns and be enforced by or for the benefit of any successor of CardFlex Financial Services, LLC and Bank. The term of this guarantee shall…guarantee all obligations which may arise or occur in connection with any activities during the term thereof….

15. The terms of Garvis's "PERSONAL GUARANTEE" obligated him to pay CardFlex for all "costs associated with enforcement of the terms hereof."

16. Garvis signed the MAA as Etail Medical's "authorized signer," certifying that all information set forth therein was "true, complete, and accurate" and that he had received a copy of an accompanying Merchant Services Program Guide ("MSPG"), which together with the MAA "contains the terms and conditions under which [CardFlex] will provide services for card transactions and other types of payments. . . ."

17. The MSPG provided that Etail Medical and Garvis, as merchant and guarantor respectively, "will be responsible for all chargebacks and adjustments associated with the transactions that [they] submit for processing."

18. The MSPG also warned that "credit cards present risks of loss and non-payment that are different than those with other payment systems," and that "[i]n deciding to accept credit cards, you should be aware that you are also accepting these risks."

**Garvis Defrauds His Customers and**
**Breaches the Contract with CardFlex**

19. Nearly 200 customers notified their credit card companies that Etail Medical had failed to deliver their orders for items such as hospital beds, wheelchair access ramps, motorized scooters, lamps for the disabled and related health products.

20. The credit card companies had paid Etail Medical and Garvis for those undelivered products, but were required to reimburse the customers for their payments and then "charge back" CardFlex, as Etail Medical's processor, for those reimbursements.

21. As of the filing of this complaint, the chargebacks total $310,612.49 and are growing daily.

22. As a result of the foregoing, CardFlex terminated the parties' contractual relationship on or about February 9, 2016, as it was authorized to do under Section 22.3 of the MSPG. Accordingly, CardFlex became entitled to $82,118.38 in "early termination fees" as set forth therein.

23. CardFlex has complied with all of its obligations under the MAA, the MSPG, and otherwise.

### Garvis's Abuse of Etail Medical's Purported Corporate Form

24. Upon information and belief, Garvis deliberately undercapitalized Etail Medical and rendered it unable to reimburse CardFlex for the chargebacks CardFlex incurred when Garvis failed to deliver the medical supplies which Garvis purported to sell, but did not deliver, to unwitting disabled and other customers.

25. After accruing and failing to pay substantial chargebacks, upon information and belief Garvis abandoned Etail Medical but continued operating his fraudulent medical supply distribution business under a similar but different tradename, using a new website to further his scheme to sell the same advertised goods to new unsuspecting customers and to collect payments from them without ever actually delivering the goods purportedly sold.

26. After CardFlex sought payment of its losses incurred as a result of Garvis's fraudulent scheme, his lawyer falsely asserted that "Mr. Garvis was never substantially involved in Etail's business operations," notwithstanding that Garvis had signed the operative contract documents on behalf of Etail Medical while identifying himself as an "owner" and subsequently identifying himself as the "individual causing" Etail Medical's registration of its tradename "to be delivered for filing."

## FIRST CLAIM

(Breach of Contract Against Garvis)

27. CardFlex repeats and realleges each and every part of paragraphs 1 through 26 above as though fully set forth herein.

28. Neither Etail Medical nor Garvis paid CardFlex, despite due demand, any of the outstanding monies owed to CardFlex for the chargebacks and early termination fees described above.

29. Accordingly, Garvis has breached his contractual obligations owed to CardFlex under the terms of his "PERSONAL GUARANTEE" set forth in the MAA.

30. By reason of the foregoing, CardFlex has been damaged and is entitled to recover compensatory damages from Garvis in an amount to be determined at trial, but presently estimated to be no less than $310,612.49 in accrued chargebacks and $82,118.38 in early termination fees, plus applicable interest, together with CardFlex's costs, including reasonable attorneys' fees, associated with its enforcement of the "PERSONAL GUARANTEE."

## SECOND CLAIM

(Breach of Contract Against Etail Medical)

31. CardFlex repeats and realleges each and every part of paragraphs 1 through 30 above as though fully set forth herein.

32. Etail Medical did not pay CardFlex, despite due demand, any of the outstanding monies owed to CardFlex for the chargebacks and early termination fees described above.

33. Accordingly, Etail Medical has breached its contractual obligations owed to CardFlex under applicable contract documents referred to above.

34. By reason of the foregoing, CardFlex has been damaged and is entitled to recover compensatory damages from Etail Medical in an amount to be determined at trial, but presently

estimated to be no less than $310,612.49 in accrued chargebacks and $82,118.38 in early termination fees, plus applicable interest.

### THIRD CLAIM

(Alter Ego and Veil Piercing Against Garvis)

35. CardFlex repeats and realleges each and every part of paragraphs 1 through 34 above as though fully set forth herein.

36. Upon information and belief, Garvis exercised complete domination and control over Etail Medical, which primarily transacted Garvis's business rather than its own; abused the privilege of doing business in the corporate form; inadequately capitalized Etail Medical and rendered it unable to pay its corporate obligations; failed to adhere to corporate formalities; and commingled assets and used corporate funds for his personal benefit, all in order to perpetrate wrongful and/or unjust acts against both CardFlex and the good-faith purchasers of the medical supplies so as to intentionally render Etail Medical unable to satisfy its obligations to CardFlex. Garvis thereby improperly utilized Etail Medical as his alter ego in an attempt to shield himself from personal liability.

37. By reason of the foregoing, CardFlex has been damaged and is entitled to recover compensatory damages from Garvis in an amount to be determined at trial, but presently estimated to be no less than $310,612.49 in accrued chargebacks and $82,118.38 in early termination fees, plus applicable interest.

38. In addition, because Garvis's actions were willful, wanton, and gross, punitive damages also should be assessed against him in an amount to be determined at trial.

## FOURTH CLAIM

(Unjust Enrichment Against Garvis)

39. CardFlex repeats and realleges each and every part of paragraphs 1 through 38 above as though fully set forth herein.

40. In the alternative, Garvis has obtained and retained for his own benefit at least $310,612.49 to which he is not entitled, and which he obtained only through his wrongful and unjust acts described above.

41. CardFlex has no adequate remedy at law.

42. By reason of the foregoing, CardFlex has been damaged and is entitled to recover compensatory damages from Garvis in an amount to be determined at trial, but presently estimated to be no less than $310,612.49, plus applicable interest.

**WHEREFORE**, Plaintiff CardFlex demands judgment against Defendant Garvis as follows:

(a) on the first claim, compensatory damages from Garvis in an amount to be determined at trial, but presently estimated to be no less than $392,730.87, plus applicable interest, together with CardFlex's costs of enforcement of Garvis's personal guarantee, including reasonable attorneys' fees;

(b) on the second claim, compensatory damages from Etail Medical in an amount to be determined at trial, but presently estimated to be no less than $392,730.87, plus applicable interest;

(c) on the third claim, compensatory damages from Garvis in an amount to be determined at trial, but presently estimated to be no less than $392,730.87, plus applicable interest, together with punitive damages in an amount to be determined at trial; and

(d) on the fourth claim, compensatory damages from Garvis in an amount to be determined at trial, but presently estimated to be no less than $310,612.49, plus applicable interest; together with the costs and disbursements incurred by plaintiff CardFlex in this matter, including reasonable attorneys' fees, and such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury for all issues so triable.

Dated: March 22, 2016

**KLEINBERG, KAPLAN, WOLFF & COHEN, PC**

By: _____

Steven R. Popofsky
David M. Schechter

551 Fifth Avenue, 18th Floor
New York, New York 10176
Telephone: (212) 986-6000
Facsimile: (212) 986-8866
Email: spopofsky@kkwc.com
dschechter@kkwc.com

Attorneys for Plaintiff
**CARDFLEX, INC., f/k/a CARDFLEX FINANCIAL SERVICES, LLC**